IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>[1] WANDA VÁZQUEZ GARCED,<br>[2] JULIO M. HERRERA VELUTINI,<br>[3] MARK T. ROSSINI,<br>Defendants. | CRIMINAL NO. 22-342 (SCC) |

**THE UNITED STATES' SURREPLY IN OPPOSITION TO DEFENDANT JULIO HERRERA VELUTINI'S MOTION TO COMPEL (ECF. NO. 438)**

The Government requested leave to file a surreply addressing the specified discovery requests in Herrera's reply in support of his motion to compel (ECF No. 458, pp. 6-8), which the Court granted. (ECF No. 466). The Government responds to the requests seriatim.

**I.  Herrera's Statements and other Rule 16 Evidence, and *Brady* Material (Reply, p. 6)**

  *A. Herrera still fails to demonstrate that OCIF was part of the prosecution team.*

Herrera's Reply first seeks to compel his "written and recorded statements" and evidence he generally describes as "exculpatory evidence" (Defendant's Reply, p.6). The prosecution has produced, or is producing,[1] all of Herrera's statements and other Fed. R. Crim. P. 16 evidence within its control. This includes all the evidence the Government has collected from OCIF during the criminal investigation, which numbers nearly 25,000 pages. Given the breadth of the grand jury subpoena to OCIF, which compelled production of "all records and account information within the custody and control of [OCIF] that were obtained by OCIF pursuant to any audit or examination of Bancredito," there is no basis to believe that OCIF has any statements from Herrera

---

[1] As the Court is aware, the Government has search warrant material to produce pending completion of its filter review. Additionally, as in any federal case, the Government will continue to produce any discoverable material it develops pending trial.

or exculpatory information that have not already been produced in discovery. FinCEN played no role in the criminal investigation of Herrera. Therefore, the only evidence at issue is that which Herrera speculates OCIF maintains in its physical control but has not provided to the Government. If the Court finds that OCIF did not jointly investigate this case with the FBI, it need not separately consider the discoverability of Herrera's specifically requested items supposedly in OCIF's control.

As previously argued, OCIF did not jointly investigate this case with the FBI. The Government's discovery obligations extend only to that evidence in its own physical or constructive possession. The law only deems evidence possessed by outside agencies to be within the federal prosecution team's constructive possession when the case is jointly investigated. *See United States v. Rivera-Rodriguez*, 617 F.3d 581, 595 (1st Cir. 2010) ("While a prosecutor must disclose information maintained by government agents even if the prosecutor herself does not possess the information, this duty does not extend to information possessed by government agents not working with the prosecution." (internal citations omitted)). The requirement of possession, custody, or control applies to all forms of evidence, including any evidence that would otherwise constitute *Brady* or Fed. R. Crim. P. 16 material. *See id.*; *United States v. Hall*, 434 F.3d 42, 55 (1st Cir.2006) ("[t]he government's obligations under *Brady* only extend to information in its possession, custody, or control."); Fed. R. Crim. P 16(b) (requiring production of defendant's statements within the government's possession, custody, or control). Constructive possession is not established merely because the agency regularly communicates with the prosecutors, *see, e.g., United States v. Rivera-Rodriguez*, 617 F.3d 581, 595 (1st Cir. 2010) (holding that evidence of an allegedly exculpatory statement to a probation officer during the preparation of a Pre-Sentence Report was not in the possession of the U.S. Attorney's Office), nor does it matter if the outside

agency's work may have spurred the prosecution team into action. *See United States v. Moreno-Morales*, 334 f.3d 140, 146-47 (1st Cir 2003) (same, regarding notes from Puerto Rico's Senate, even though "federal prosecutors may have observed some of the questioning and may have reopened their investigation as a result of what they learned in the hearings").

The cases cited by Herrera's Reply demonstrate why his motion should be denied. *In United States v. Ramos-Cartagena*, the defendants argued that the Puerto Rico Department of Justice was part of the federal prosecution team, seeking a cooperating witness's plea agreements with Puerto Rico prosecutors. 9 F. Supp. 2d 88, 91 (D.P.R. 1998). The court rejected that argument because "there was no joint state and federal prosecutorial effort in obtaining the return of an indictment . . ." The defendants in *Ramos-Cartagena* had a much stronger case for a joint prosecution than Herrera: Puerto Rico police officers arrived first at the crime scene and had been detached to the FBI's Safe Street Task Force. *Id.* Even Herrera does not allege that anyone from OCIF ever worked with the FBI to obtain the indictment, much less that its examiners have any role similar to police officers on a joint task force. *Id.* The court in *Ramos-Cartagena* specifically noted the perils of weaponizing discovery as Herrera has done in this case: "the imposition of an unlimited duty . . . to inquire of the offices not working with the prosecutor's office . . . would inappropriately require us to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." *Id.*

The only other case that Herrera cites from this district demonstrates by comparison the weakness of his joint investigation argument. In *United States v. Castro*, local police initiated a carjacking investigation, interviewing the victim and the defendant, conducting a photo-lineup, photographing the scene, and conducting forensic testing of crime scene evidence. 502 F. Supp. 2d 218, 219–20 (D.P.R. 2007). Ruling for the defendant, the Court found that the federal

3

government then "took over the case," *id.* at 220, and "received next to nothing from the existing local files." *Id.* at 223. *Castro* demonstrates what an expanded prosecution team looks like. Comparing local police officers who collected a mountain of carjacking evidence in a federally adopted carjacking case to regulators' examination of Bancredito's banking compliance -- an entirely different crime than the bribery -- puts in stark relief the difference between a legitimate and meritless joint investigation argument.[2]

### B. *Herrera fails to articulate materiality for the speculative exculpatory evidence he seeks.*

"[W]hen a criminal defendant seeks discovery, he must be able to articulate with some specificity what evidence he hopes to find in the requested materials, why he thinks the materials contain this evidence, and finally, why this evidence would be both favorable to him and material." *United States v. Flete-Garcia*, 925 F.3d 17, 33 (1st Cir. 2019) (internal quotations omitted). "[A] general description of the materials sought or a conclusory argument as to their materiality is insufficient." *United States v. Rosa-Pagan*, 2010 WL 2521032, at *3 (D.P.R. June 16, 2010). The explanation for the evidence's materiality has to be grounded in an actual trial defense. *See United States v. Mathur*, 624 f.3d 498. 506-07 (1st Cir. 2010) ("The animating principle of *Brady* is 'the avoidance of an unfair trial.'" (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).

---

[2] The other two cases that Herrera cites fare no better in advancing his argument. In *United States v. Denunzio*, the court found that although the indictment alleged 15 overt acts involving Massachusetts state investigators, it "does not mean that IEB investigators were acting on behalf of the federal prosecutors in this case." 123 F.Supp.3d 135, 144 (D. Mass., 2015). *Denunzio* undermines Herrera's argument that simple reference to OCIF or the BSA in the Indictment somehow expands the prosecution team's scope. The only evidence that the court found the prosecution team constructively possessed was information known by a state prosecutor who had been added to the federal case as a Special Assistant United States Attorney, *id.* at 143-44, which has not happened here. The *United States v. Velez* involved a case of <u>actual</u> entrapment, where a defendant charged with being a felon in possession of a firearm made a threshold showing through an affidavit that he feared a cooperating witness would harm his family if he didn't store the subject guns. 2020 WL 4040730, at *2 (D. Mass., July 17, 2020). The court ruled that because the cooperating witness was working with a local detective who began the firearm investigation, the Government needed to produce the detectives' reports. *Id.* at *8 n.5. Here, Herrera has made no such showing of entrapment.

In his reply, Herrea asserts that the Government has "selectively subpoenaed information from OCIF" while "refusing" to request "potentially exculpatory materials." (Herrera's Reply, p. 6). But he fails, again, to articulate what evidence a state banking regulator could possess that would exculpate him from federal bribery charges. Even if the FBI and OCIF randomly and without reason conducted an examination of his bank as he alleges – which itself requires discounting that Bancredito accepted responsibility for willful violations of the Bank Secrecy Act[3] – what trial defense does this serve? Certainly not entrapment, which requires him to show that "the government provided him with an opportunity to commit the crime." *United States v. Vasco*, 564 F.3d 12, 18 (1st Cir. 2009). Herrera has never alleged that OCIF (or anyone) asked him to bribe Governor Vazquez. Hererra had an opportunity in his Reply to explain how the evidence he seeks would support an entrapment defense and he did not. His reply's only reference to entrapment was in passing: "The Government is fully aware of the materiality of the evidence requested both as to potential defenses, including those described above, entrapment, and the absence of any explicit quid pro quo . . ." (Reply, p. 8). This is precisely the type of "conclusory argument as to their materiality [that] is insufficient." *Rosa-Pagan*, 2010 WL 2521032, at *3.

## II. Herrera's specific requests

For the discovery requests that Herrera's Reply specifically addresses, as with his general requests for *Brady* and Rule 16 material, if the Court finds that OCIF was not part of the prosecution team, it need not consider Herrera's materiality arguments. *Cf. United States v. Hughes*, 211 F.3d 676, 688 (1st Cir. 2000) ("[W]e need not inquire into the potential exculpatory

---

[3] https://www.fincen.gov/news/news-releases/fincen-announces-15-million-civil-money-penalty-against-bancredito-international

value of the missing photographs. Because the government was never in control of the photographs, it is not responsible for any failure to produce them.").

As an initial matter, even assuming OCIF has any of the evidence Herrera requests, the Government would likely need to obtain the additional evidence through a Fed. R. Crim. Pro. 17 trial subpoena. *See United States v. Calk*, 87 F.4th 164, 186 (2d Cir. 2023) ("It is improper for the Government to use the grand jury for the sole or dominant purpose of preparing for trial under a pending indictment.") (internal quotations omitted). This is important for two reasons.

First, the need for a subpoena to obtain the evidence from OCIF speaks to the threshold question regarding the scope of the prosecution team and weighs in favor of the Government's position. *See United States v. Sarras*, 575 F.3d 1191, 1215 (11th Cir. 2009) (finding no government "possession, custody, or control" of evidence that could have been subpoenaed from third parties; "[i]t was not the government's responsibility to track down third-party evidence for [the defendant]"); *United States v. Graham*, 484 F.3d 413, 417-18 (6th Cir. 2007) (finding the government's obligation to disclose exculpatory evidence does not extend to material the government would have to obtain from a witness by subpoena, even though the witness is cooperating with the prosecution pursuant to a plea agreement, because such material is not within the government's control); *United States v. Sayler*, 271 F.R.D. 148, 156 (E.D. Cal. 2010) ("The need for formal process in the acquisition of documents is the antithesis of 'access' as defined by the above cases."). As one court has stated,

> "The fact that the government (like the defendant or any other party) might obtain or gain access to an item from its possessor by means of a subpoena duces tecum or other discovery mechanism cannot be enough to establish that the government has 'control' over the item within the meaning of Rule 16; on the contrary, the need to resort to such legal process would show that the basic indicia of control are absent. And <u>it goes without saying that the government's ability to take a thing by force without right does not equate to Rule 16 control</u>."
> *Weems v. United States*, 191 A.3d 296, 302-03 (D.C. 2018) (emphasis added).

Second, as a matter of judicial efficiency, Herrera is just as capable of the Government of seeking a Rule 17 subpoena. If he has not done so, it underscores that this is simply a litigation tactic – a pursuit not of evidence necessary for his defense, but rather an effort to manufacture discovery litigation. On the other hand, if he has sought to compel this evidence through the Court, then it should moot this issue.[4] However, even if 1) the Court finds that OCIF was part of the prosecution team; 2) Herrera cannot obtain this material through his selected parties litigation with OCIF; and 3) OCIF possesses the evidence requested, the requests should still be denied for the reasons that follow.

A. *<u>Evidence Related to OCIF Commissioner OCIF Commissioner A (Requests 4-5, 7-12)</u>* – Herrera asserts that requests 4-5 and 7-12 are relevant because they would provide an alternative reason for [OCIF Commissioner A's] resignation and undermine the bribery allegations." (Herrera's Reply, p. 7). Request 7 seeks the sort of information that might be expected to be found in a personnel file at OCIF. (*See* ECF No. 438-1, ¶ 11 (*e.g.*, records of absences, compensation, and performance)). The Government does not object to this request, assuming OCIF would voluntarily provide it. But as noted above, Herrera could simply "cut out the middle man" and obtain it himself through a Rule 17 subpoena.

Requests 5, 8-9, and 11-12 all appear to be material that would be in the possession of the Governor's office. The Government has no additional material in response to these requests other than what has been and is being produced to the defendants. Request 10 seeks evidence of OCIF Commissioner A's association with an individual from the Economic Development Bank. The

---

[4] Herrera is involved in "selected parties" litigation in this case to which the Government is not privy. The Government, therefore, can only surmise that he seeks to compel evidence through that litigation. But Herrera simultaneously seeks the Court to compel OCIF to produce this evidence to him directly, it obviates the need for the Government to obtain it. It's unnecessary for Herrera to compel the Government to seek from OCIF the same evidence that that he likely seeks to compel from OCIF directly.

7

Government already advised Herrera that the FBI searched its database for this individual's name and found no records.

   B. *__Communications between OCIF and Agencies Other than the FBI (Requests 14-16)__* - Request 14 seeks seven years of communications between "OCIF and any federal agency" concerning Bancredito or Herrera. Request 15 extends that request to the Puerto Rico legislature, the Governor's office, and various individuals associated with the Governor's office or a past gubernatorial campaign, including Policial Consultant A. Request 16 requests any directions given to OCIF by any law enforcement agency and the Governor's Office. Herrera argues only that it is material because such "instructions or directions" are "crucial to his claims."

   Such a request is overbroad and Herrera's justification for it is insufficient. The FBI is the only federal law enforcement agency involved in this prosecution and the Government produced its investigative file. Herrera's explanation for the materiality of Requests 14 and 15 is that they are "relevant to the BSA charges that were a primary object of the OCIF audits." There is only a single criminal charge (not charges) that alleges a BSA violation and that is Count Five, a conspiracy charge alleging a BSA violation as one of two prongs. Count Five is based purely on Herrera's second bribery scheme, which had ending OCIFs' examination and ensuring the bank did not have to file more SARS as its object. The charge does not allege a *historical* violation of the BSA based on the past banking practices that OCIF audited. The request should be denied.

   For Request 15, Herrera asserts that "FinCEN, not the FBI, is the enforcer of the BSA," and that "FinCEN's changing assessment of the BSA and the BSA violations against the Bank" are "crucial to Mr. Herrera's defenses." FinCEN safeguards the financial system from illicit conduct, and civilly pursued Bancredito for BSA violations, resulting in a $15 million settlement. It had no role in the criminal investigation before the Court, and an agency's parallel investigation

alone does not create a joint investigation. *See, e.g., United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996) (Government not required to search files of the SEC or IRS where there was no joint investigation); *United States v. Upton*, 856 F.Supp. 727, 749 (S.D.N.Y.1994) (same, FAA); *United States v. LaCost*, 2011 WL 1542072, at *8 (D.D.C., Apr. 22, 2011) (same, FDIC). Evidence in FinCEN's control was a matter for its civil enforcement against Bancredito, which has settled.

C. **The FBI's Communications with OCIF (Request 35)** – Request 35 seeks all communications between the FBI and OCIF. This is overbroad. Herrera is not entitled to communications between the FBI and OCIF not pertaining to Bancredito. The Government agreed to have the FBI search for its direct communications with OCIF, and the Court has since ordered that this discovery be provided by February 22, 2024 (ECF No. 457). The FBI is actively conducting this search, and barring any unforeseen, compelling reason for non-disclosure (which the Government would vet with the Court), the Government will produce these communications. Herrerra's Request 35 goes well beyond this should be denied.

D. **Evidence Related to OCIF Commissioner B (Requests 17-19)** – Requests 17, 18, and 19 seek evidence demonstrating that OCIF Commissioner B did not improperly influence OCIF. This evidence will not serve Herrera's defense: the bribe's object was OCIF Commissioner B's appointment, and the Government will prove that happened. That the OCIF examination did not end as Herrera hoped is not a defense because the bribe was complete. And evidence that OCIF Commissioner B ultimately recused from the Bancredito matter has already been produced.

E. **Alleged Destruction of Records (Requests 20-24)** – Requests 20, 21, 22, 23, and 24 seek evidence of OCIF employees destroying evidence. Herrera bases this request on a single line from a single interview of a single employee produced by the Government. In 2022, after the FBI learned of the bribery of Governor Vazquez, and caught the bribe offer to Political Consultant A

9

on tape, it interviewed several OCIF employees who examined Bancredito. The examiners had found Bancredito to be exceptionally hostile to their examination, more so than any other Puerto Rico bank. It often bordered on intimidation.[5] So, when Governor Vazquez replaced OCIF Commissioner A with a former consultant for Bancredito, they became concerned about their own job security. One examiner said that Bancredito's attorneys sent a letter to FinCEN stating that the OCIF employees should be held accountable, which "made [the examiner] fearful of losing her job." (ECF No. 262-9, p. 4). Of note, the starting salary of the OCIF examiners was reportedly $24,000;[6] a threat of losing their job was understandably upsetting. The examiner "became very upset" and "worried about the Bancredito examination." *Id.* She said in her interview that she told her employees to erase all their emails so that [OCIF Commissioner B] would not have access to them." *Id.*, pp. 4-5. Assuming this happened, the Government first learned of it during this interview, documented it, and produced the interview memorandum to Herrera. The Government has no further evidence of this in its possession.

    F. **_Herrera's Own Communications with Public Official A (Request 32)_** – Herrera seeks any communications between him and Public Official A. The Government provided Herrea with full forensic copies of the two email accounts it seized and searched in November 2022. The Government does not have any other evidence of such communications.

### III.    Conclusion

    For the reasons above, Herrera's Motion to Compel should be denied.

---

[5] Their concerns were not unfounded: Herrera hired an investigator to follow one examiner. (ECF No. 301-5).
[6] https://periodismoinvestigativo.com/2022/12/office-of-the-commissioner-of-financial-institutions-loses-accreditation%EF%BF%BC%EF%BF%BC/

**Certificate of Service**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will notify all counsel of record.

**RESPECTFULLY SUBMITTED**, this 31st day of January, 2024.

        COREY R. AMUNDSON
        Chief, Public Integrity Section
        U.S Department of Justice

        */s/ Ryan R. Crosswell*
        Ryan R. Crosswell (G03502)
        Nicholas W. Cannon
        Trial Attorneys
        Department of Justice
        Public Integrity Section
        1301 New York Ave., NW - 10th Floor
        Washington, D.C. 20530
        (202) 616-5699
        ryan.r.crosswell@usdoj.gov